'' FANNY MANHEIM '', Petitioner, *v.* '' IRVING MANHEIM '', Respondent.*

Domestic Relations Court of the City of New York, Family Court,
Bronx County, February 7, 1951.

---

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482, as am'd.).

*Sidney Eisen* for petitioner.

*Joseph G. Wiman* for respondent.

SICHER, J. The situation here presented strikingly illustrates the evils of a sister-State constructive service nugatory default divorce decree, whereby a husband-father, in the attempt to throw off legal and moral obligations which chafe him, creates additional difficulties for himself and hardships for the victims of his selfish lack of a proper sense of responsibility.

The parties duly intermarried on December 13, 1941, in New York City; and of that union there is one child ("Joseph", born on September 21, 1947).

Becoming infatuated with a married woman respondent effectuated a formal separation agreement with petitioner on April 17, 1950. That agreement is in the conventional form and provides, *inter alia,* that the wife might retain as her sole property the household furniture and other contents of the apartment they had been occupying at X Street, Bronx; that the sum of $2,825 then on deposit in the Y Savings Bank of the city of New York in a joint account and the subject of an action by the husband in the Supreme Court, Bronx County, should be divided in the proportions of $800 to the wife and the balance to the husband; that the wife should have the custody and control of the child and supervision of his education until he attains majority (subject to certain visitation provisions set forth in the agreement); that the husband would contribute each week $10 toward the child's maintenance and support until the age of eighteen years; that he would contribute an additional weekly sum of $10 to the wife during his and her

joint lives or until such sooner time as she will have remarried after divorce of the parties; and that, if the husband default in the due performance of the agreement, " the Wife shall have the right, at her election, to sue for damages for breach of this agreement, or to bring an action for a legal separation or for support and maintenance ". The agreement also contained a provision which should have alerted respondent to the worthlessness of the October 24, 1950, constructive service default Florida decree, namely: " If the Husband shall obtain a decree of divorce against the Wife, *in a Court of competent jurisdiction, on personal service of process in a state in which both parties are domiciled, which decree is recognized as valid and binding on the Wife in the state of her domicile,* the Wife's right to payments for her separate support and maintenance and for her separate use and benefit under paragraph ' 4 ' of this agreement, shall, thereupon terminate ". (Emphasis supplied.)

Petitioner has received her stipulated $800 share of the bank account and also $750 as the proceeds of the sale of the apartment contents; she and the child " Joseph " have moved into petitioner's mother's apartment; she contributes $25 a week toward the cost of her and " Joseph's " food and lodging there; and, relying on her mother to care for " Joseph " during the day, she earns in outside employment $40 a week.

But the $20 weekly cash payment provisions respondent violated almost from the inception of the agreement; also, he has only partially performed the temporary order of this court in that amount entered on January 4, 1951.

Instead of continuing at work and performing that agreement respondent departed to Florida in June, 1950, with the primary, if not sole, objective of procuring in that State of easy requirements the " quickie " constructive service default decree of divorce entered October 24, 1950; immediately thereafter he returned to New York City and started work as a machinist at $1.50 per hour for a five-day week of forty hours, in lieu of his previous taxicab driver employment of higher earnings; he " remarried " the paramour on December 30, 1950; he purchased furniture for their home on an installment plan which, he says, calls for the payment of $8.25 a week on a January 4, 1951, alleged balance of $513; he voluntarily assumed to repay to the paramour's father $10 a week in liquidation of advances of $1,000 to the paramour; and he blandly urges as further excuse for his callous disregard of the prior rights of his lawful wife and child that his $2,000 share of the joint bank account

has been consumed for the purchase of a pleasure automobile and the expenses of his Florida sojourn and of the divorce actions instituted there in behalf of himself and his paramour.

A support proceeding was instituted in this court on June 9, 1950, by the filing of a petition and the issuance of a warrant for respondent's arrest under subdivision (c) of section 123 of the New York City Domestic Relations Court Act, which provides that a warrant may be issued in such civil proceeding " When a petition is presented to the court and it shall appear * * * (c) that the respondent is likely to leave the jurisdiction ".

Because of respondent's absence from this State until about November 1, 1950, that warrant had to be renewed on December 6, 1950; and not until January 4, 1951, did respondent attend this court, in response to a warrant officer's notice enabling him to surrender without being jailed.

Following the customary probation bureau intake conference that day the parties were brought before me and a preliminary hearing held, after respondent had been duly advised of the allegations of the petition and of his constitutional rights under section 131 of the Domestic Relations Court Act, waived counsel, and stated his readiness to proceed.

At the conclusion of a formal hearing that day I indorsed on the petition: " Petitioner and respondent. Attorney for petitioner. Ready. Temporary Order (without prejudice) $20 a week beginning 1/8/51. Petitioner is entitled to support on means basis under Dom. Rel. Ct. Act, § 92, subd. 1. It is held that the constructive service divorce decree respondent procured in Florida was not based on a *bona fide* residence and it is not entitled to full faith and credit in this Court (without prejudice to the rights of either party in a plenary action in the Supreme Court of the State of New York, under *Loomis* v. *Loomis,* 288 N. Y. 222). Adjourned to 1/24/51. Check on earnings and other facts bearing on final order. Application for bond is denied at this time, without prejudice to renewal if respondent fail to obey the temporary order. Paroled."

The Florida default decree was not exhibited. But, assuming *arguendo* its prima facie validity (*Williams* v. *North Carolina,* 317 U. S. 287, 325 U. S. 226; *Matter of Holmes,* 291 N. Y. 26), the uncontroverted proof clearly established that respondent went to Florida to procure a divorce decree there without actual change of his New York domicile of origin (see *Matter of Franklin* v. *Franklin,* 295 N. Y. 431; *Rose* v. *Rose,* 277 App. Div. 1137, and " *Kurski* " v. " *Kurski* ", 185 Misc. 97).

In respect of orders of this court the Florida decree is a mere piece of paper without legal force, even though this adjudication would not be binding in any subsequent plenary Supreme Court action (*Loomis* v. *Loomis*, 288 N. Y. 222); and for reasons elaborated in " *Morton* " v. " *Morton* " (199 Misc. 547) it is therefore suggested that petitioner consider the advisability of seeking a conclusive determination of the marital status by an action for a declaratory judgment (Civ. Prac. Act, § 1169-a) or an action for separation or divorce, as she may be advised.

Subdivision 5 of section 137 of the Domestic Relations Court Act provides: " A separation agreement shall in no way preclude the filing of a petition for the support of a child or the making of an order for its support by the family court, or for the support of a wife who is likely to become a public charge."

Moreover, although the wife is at this time not likely to become a public charge, nevertheless respondent's default in performance of the separation agreement opens the door of the Family Court to a petition for support of the wife, as well as of the child, as a matter of law (see " *Jenkins* " v. " *Jenkins* ", 179 Misc. 905), even apart from the above-quoted permissive provisions of the separation agreement.

This court has no jurisdiction to enforce a separation agreement *as such* (see " *Johnston* " v. " *Johnston* ", 177 Misc. 618). But, especially because it was so recently executed, the provisions of that agreement may be considered among the " circumstances of the respective parties " to which this court may have " due regard " under subdivision (1) of section 92 of the Domestic Relations Court Act; and although not conclusive, it constitutes persuasive evidence as to respondent's financial ability and the scale of contribution which the parties had agreed as being within his means.

It has also been abundantly shown that $20 a week is a fair measure of respondent's minimum potential, if not actual, earning capacity *at this time*, and that his alleged impairment of ability to contribute that amount regularly derives from his willfully giving priority to subordinate obligations voluntarily assumed with full knowledge, and in disregard, of his prior obligations to his lawful wife and child.

Wholly unpersuasive is respondent's counsel's plea that " the test in this case should be not one of vindictiveness for having remarried and the fact that the Court under New York law cannot recognize his second marriage ". Such argument is in effect an unconscionable plea that the court recognize a patently

invalid Florida "quickie" divorce decree and countenance respondent's financing that futile action and also his paramour's divorce and his giving preference to her alleged debts and the support of her child, over his formally agreed *prior* obligations to his *lawful wife and child.*

Equally unconvincing is counsel's further argument that the court must predicate its support order on the theory that the respondent may be expected to work not more than five days a week. It is a well-established common-law doctrine that the measure of a husband-father's duty of support is his *potential,* and not necessarily lesser actual, earnings (see *" Everett "* v. *" Everett "*, 197 Misc. 515, and cases cited); and there is an express statutory declaration of that principle in subdivision 1 of section 101 of the Domestic Relations Court Act, namely: " A husband is hereby declared to be chargeable with the support of his wife and children and, if possessed of sufficient means *or able to earn such means,* may be required to pay for their support a fair and reasonable sum according to his means, as may be determined by the court." (Emphasis supplied.)

Respondent saw fit to give up a job from which he had earned a *net* in excess of $60 a week for a five days' job which pays only that *gross* sum for forty hours a week and which netted him an average of $52.66 a week for the eight weeks' period from November 2 to December 28, 1950. That eight weeks' average reflects an item of only $23.52 for the initial (partial) week but also some overtime during five weeks. So, unless that job continues to yield overtime pay respondent ought to do taxicab week-end work until the expiry of his license therefor.

Petitioner's current earnings, her savings bank nest egg of a few hundred dollars, and her mother's according to her and " Joseph " a place to live, are among the " circumstances of the respective parties " which have been weighed pursuant to subdivision (1) of section 92 of the Domestic Relations Court Act in my setting as today's order figure the stipulated separation agreement sum of $20 a week. However, that sum is inadequate for the reasonable needs of petitioner and " Joseph " and is therefore subject to an application for increase, pursuant to Family Court Rule XVI (Bender's Court Rules [1st ed.], pp. 369–370), when and if respondent's average net earnings, over a period sufficiently long to be indicative, exceed today's assumed base of $52.60 a week. For, " To a wife lacking all other income the husband may be required to contribute a larger amount than to one who is partly or even wholly self-

supporting. But it does not follow that a wife's ability and self-respect in pursuing gainful occupation necessarily deprive her entirely of the support contribution which would be accorded to her if too unenergetic or inefficient to be a wage-earner. Save in a case where the wife's misconduct has reduced the husband's support obligation to one of indemnifying the community against her maintenance as a public charge, he may not claim exemption solely because the wife has made herself economically useful and is improving her scale of living or laying by for a rainy day." (" *Walton* " v. " *Walton* ", 180 Misc. 746, 747–748; see, also, *Tell* v. *Tell*, 53 N. Y. S. 2d 94, 101.)

Respondent's attorney's February 1, 1951, letter-brief states: " Respondent informs me that he no longer owns the automobile petitioner is making so much fuss about ". So, moneys should be available from the proceeds of its sale for the cash security which respondent's disregard of the temporary order and his entire attitude make advisable and necessary.

According to a February 5, 1951, support bureau statement the temporary order arrears now aggregate $52.

Subdivision (d) of Family Court Rule XIV (Bender's Court ·Rules [1st ed.], p. 368) provides: " Respondent's failure to obey a temporary order may be deemed ground for requiring a bond to secure compliance with the final order or for issuance of a warrant under Dom. Rel. Ct. Act, § 132, subd. 1 or for the entry of an order on the Comptroller or other disbursing officer under Dom. Rel. Ct. Act, § 132, subd. 2."

Moreover, the above-quoted indorsement at the conclusion of the January 4, 1951, hearing included an express caveat that the then denial of petitioner's application for a bond was without prejudice to renewal if respondent fail to obey the temporary order entered that day.

Accordingly, upon the entire record, the court hereby finds that the allegations of the petition have been fully sustained; respondent is hereby held chargeable with the support of the petitioner-wife and the child " Joseph " according to his means; and he is therefore hereby ordered and directed to pay into this court, until further order, for their support the following sums:

(1) $20 a week, each and every week, beginning February 13, 1951, and each and every Monday thereafter, beginning February 19, 1951, until further order of the court; and

(2) *in addition*, by 10:00 A.M. on February 26, 1951, the sum of $52 in payment of the temporary order arrears in that amount accrued to this date.

To assure compliance with today's order respondent is hereby ordered to post a cash bond in the sum of $302, or in a default of furnishing such surety to stand committed to the warden or keeper of the city prison or jail or workhouse of the city of New York for a period of four months from date of commitment or pending further order of the court (see N. Y. City Dom. Rel. Ct. Act, § 92, subd. [11]; §§ 151, 154, and *Monroe* v. *Monroe*, 45 N. Y. S. 2d 589; also Family Court Rule XXXVI; Bender's Court Rules [1st ed.], p. 374). Such deposit shall stand as security for all payments accruing under today's order until December 1, 1951; and if sooner exhausted by drafts thereon in consequence of respondent's default, a further bond may be requested under section 159 of the Domestic Relations Court Act.

The time for posting such bond is hereby stayed as follows:

(a) until 10:00 A.M. on February 26, 1951, for the deposit of $52, the whole of which sum shall be remitted to petitioner immediately upon deposit in liquidation of the above-described temporary order arrears; and

(b) the time for deposit of the balance of $250 is hereby stayed until ninety-six hours after the first default in due performance of today's order, or longer in the discretion of the justice then sitting if, but only if, respondent's default be due to illness, loss of employment without his fault, or other reason beyond his control. But in exercising that discretion the justice then sitting may give due weight to respondent's past inclination to evade his legal and moral obligations.

Respondent's attorney omitted to include any suggestion or request for visitation.

Point III of petitioner's attorney's brief reads: "In view of the fact that the child herein is 3½ years old, and in all probability goes to sleep at about seven o'clock in the evening, and in view of the fact that both the respondent, as well as the petitioner work all day, it seems impractical for the Court to allow visitation of the respondent during the week working days. Therefore counsel suggest that the respondent be allowed several hours each Saturday to visit his child, immediately after lunch, from 1 P.M. to 4 P.M. If the Court believes that greater visitation rights should be allowed to the respondent, petitioner will comply with the order."

It is assumed that the parties will make amicable visitation arrangements. When and if there arise any future controversy concerning visitation, that phase may be scheduled in ordinary

course for disposition by the justice then sitting.  But any dispute concerning visitation shall not affect or impair respondent's duty to comply with today's support order, unless and until otherwise expressly directed.  (See Grossman, New York Law of Domestic Relations, § 162, and cases cited; also, the discussion in " *Almandares* " v. " *Almandares* ", 186 Misc. 667.)

Notice shall be given to the parties pursuant to the subjoined direction.