ZENA G. BORCHARD, Respondent, v. STUART BORCHARD, Appellant.

First Department, March 27, 1958.

*Jay Leo Rothschild* for appellant.

*Louis Nizer* of counsel (*Walter S. Beck, Seymour Shainswit* and *Jerome J. Wallner* with him on the brief; *Phillips, Nizer, Benjamin & Krim,* attorneys), for respondent.

BASTOW, J. The issues upon this appeal are comparatively simple. They come to us, however, buried in a completely unorthodox trial procedure, and weighted down with an unnecessarily long record, inordinately lengthy briefs, reply briefs and supplemental briefs. The pleadings presented to the trial court the respective requests of husband and wife each seeking a separation from the other. In addition the plaintiff wife sought custody of the infant child of the marriage and a monetary allowance for the support of the child and herself. Following joinder of issue there ensued a hybrid proceeding in the trial court that commenced on June 15, 1956 and ended on June 27, 1957. In this court we have a printed record of nearly 1,800 pages, voluminous exhibits numbering nearly 100, and printed briefs totaling 270 pages.

Before passing upon the merits of the appeal we pause to comment upon a growing ritualistic proceeding that is evolving generally in this type of action and in particular where it appears that the husband, be he plaintiff or defendant, is a person of substantial means. We have observed with growing concern an almost classic pattern in many of these matrimonial actions commencing with the barring from the home by one spouse of the other; the posting of guards to enforce the non-judicial decree against the evicted spouse; and the ensuing use of the courts by one spouse or the other, or both, in an attempt to enlarge the area of battle with time-consuming procedures.

In the present case we find that the action was commenced in November, 1955 and issue was joined on December 27, 1955. On February 21, 1956 an order was made allowing the wife temporary alimony of $250 per week for the support of herself and the child and the right to continue to occupy rent free the apartment that had been the former home of the parties. It is significant in the light of subsequent developments that no application was made for counsel fees. The order did, however, set the action for trial commencing March 5, 1956. The so-called trial opened on June 15 and was adjourned to June 18. On that day it was agreed that an examination before trial of the husband "with respect to the financial aspects of the case" should proceed before the court. This was done and the record shows that the pretrial examination commenced on June 19 and

continued up to and including June 28. This examination covers nearly 700 pages all of which were subsequently offered and received in evidence as an exhibit. It would appear that the trial commenced on June 28. Lengthy opening statements were made by respective counsel which cover some 30 pages in the record.

The defendant husband was called as the first witness by the plaintiff but the latter's counsel immediately stated that " this may be part of the holdover from the examination before trial." There then appears some 90 pages in the record of further pretrial examination relating solely to defendant's finances. The trial was then recessed for some two and a half months to September 17, 1956. The record, however, is silent as to any further activity until March 18, 1957 when defendant was recalled to the stand for further pretrial examination. Defense counsel objected and lengthy arguments ensued but over the strenuous objections of the defendant the pretrial examination continued for another 180 pages of the printed record. It was concluded by the statement of plaintiff's counsel that there were " many more matters " but that the plaintiff would be called as a witness with the right to further examine defendant as to his finances. Subsequently there was further and lengthy cross-examination of defendant relating to his assets and income.

Thus, a substantial part of the first of three volumes of the printed record is filled with what amounted to a pretrial examination as to the financial status of the husband. If the plaintiff had been entitled to such an examination it should have been sought and conducted under the procedure set forth in the Civil Practice Act. It may be immaterial as to when the trial actually started but a litigant should not be compelled to print and an appellate court required to examine hundreds of printed pages in a voluminous record that relate solely to matters that should have been concluded upon a pretrial examination.

We have held that as a general rule examinations before trial in matrimonial actions will not be granted (cf. *Hurwitz* v. *Hurwitz*, 3 A D 2d 744). We recognize that here the defendant consented to the examination and such could properly have been conducted in the normal manner without consuming the time of the Trial Judge. After the trial had commenced, however, and both counsel had made their opening statements such examination, whether denominated pretrial or, as contended by plaintiff, an examination during trial, should not have been permitted.

Further confusion was injected into the trial in its latter stage by the amendment of the complaint to add an additional

cause to recover $82,500 indebtedness alleged to have been incurred by plaintiff for services of her attorneys, accountants and appraisers. It was first agreed that this issue should be decided upon affidavits. Some weeks after the trial was completed a decision was made granting plaintiff a decree of separation but holding in abeyance the cause of action to recover for necessaries. Six weeks later the trial was reopened and the affidavits relating to counsel fees were returned to respective counsel. Ten days later further testimony was taken as to the reasonable value of the services of the attorneys, the accountants and appraisers.

It is difficult to describe the chaotic condition of the record in this court. Without attempting to decide when the trial commenced, it is undisputed that this simple litigation occupied the time and attention of the trial court intermittently for over a year. The trial court in an earnest effort to expedite the trial was thwarted at every turn by seeming compliance with his directions but immediate return to the path that counsel planned to follow in the first instance.

We see no valid reason to justify the growing practice of permitting the trial of a matrimonial action to deviate so widely from other types of litigation. The result may be an impressive number of hours spent by all counsel in preparation for and trial of the action but the issues presented are usually simple as compared to an intricate corporate reorganization to which reference is made in the briefs. We have no control over the thousands of hours that counsel may devote to preparation but when the case reaches court it should be tried with dispatch and in accordance with recognized procedures. We have considered the advisability of directing a new trial to require the issues to be determined upon a concise record but recognize that this, in substance, would burden the appellant with further expense.

The judgment entered upon the decision granted a decree of separation to the plaintiff and awarded to her custody of the child. The defendant's counterclaims were dismissed. We cull from the record sufficient proof to justify the determinations made and the decision as to this part of the case should be affirmed.

The defendant also appeals from an intermediate order denying his motion for an order directing the issuance of a commission to take the testimony on interrogatories of a physician in Connecticut who, it was claimed, had treated the plaintiff in 1947 and 1948 for alleged mental disorders. It is further con-

tended that the trial court committed reversible error in refusing to direct the issuance of a commission to the same doctor upon the ground that plaintiff had waived the privilege established by section 352 of the Civil Practice Act. In our opinion the intermediate order was properly made and no error was committed in this respect upon the trial. It is unnecessary to reach the question as to whether there was evidence sufficient to find that there had been a waiver of the privilege within the meaning of section 354 of the Civil Practice Act. The basis of the several applications for the issuance of a commission to the doctor in Connecticut was a letter written by the latter to counsel for appellant. Implicit in the requirement that the testimony of a witness to be taken by deposition is material and necessary is the burden upon the moving party of establishing that such witness is qualified to testify upon the subject of the proposed examination. Here the proffered proof fails to show that the doctor was qualified to testify upon the issues presented by the pleadings. To the contrary the letter in general terms states certain conclusions relating to the marriage between the parties. There is a complete failure therein to establish that the doctor was qualified, as contended by defendant, to testify to any neurotic or psychotic condition. The opinions stated therein as to the probable success or failure of the marriage might well have been founded upon findings relating to personality traits or general incompatibility. Lastly, and most important, the doctor in his communication expressly stated that his interviews with plaintiff had been inadequate for the problem presented.

The judgment also awarded plaintiff annual sums of $30,000 for permanent alimony and $12,000 for the support and maintenance of the four-year-old child and ordered defendant to pay plaintiff $42,000 which was found to be the reasonable value of plaintiff's attorneys' services and their disbursements. The defendant contends that all of these are excessive. As has been indicated, a substantial part of the trial was devoted to an exploration of the assets and income of the defendant. It may be stated without further elaboration that the defendant is a man of substantial wealth. In fixing the amount of alimony it has been said that it may not be determined by any mathematical formula. In general it is decided by consideration of several factors (cf. *Phillips* v. *Phillips,* 1 A D 2d 393, 398). Usually, however, the balancing of these factors is of greater relevancy when awarding alimony from a modest income. In determining the amount to be paid by a husband of wealth and

a substantial income, the other factors become of less importance and the search becomes to a large extent one to determine the standard of living of the parties. Thus, this court has recently said in speaking of temporary alimony that "A wife is not entitled to share in a husband's income as such, but is entitled to support on the basis of the established standard of living, if otherwise reasonable, within the income of the husband." (*Hearst* v. *Hearst,* 3 A D 2d 706, affd. 3 N Y 2d 967.) While the other factors are not to be ignored, an award, as in this case of a total annual sum of $42,000 can only be justified by substantial proof of the standard of living of these parties which relates "to the distinction which is reasonably made between the living expenses of people in humble pecuniary circumstances and those whose incomes justify a scale of living not hampered by the same monetary restrictions". (*Gould* v. *Gould,* 61 Misc. 120, 122.)

The proof of plaintiff upon this subject is far from satisfactory. It consists principally of plaintiff's estimates as to the annual cost of the mode of living of the parties. It has no probative force as to many of the items because they were built upon one hearsay statement after another with the witness having little or no knowledge upon the subject. The method of presenting the proof makes difficult the task of evaluating the evidence and further confuses the record. Plaintiff's counsel specifically refers us to some 40 pages in the record concerning proof of the standard of living. After reciting many figures plaintiff gave an affirmative answer to the question that the total was $93,500 and might exceed $100,000 annually. Upon analysis of this testimony, however, it appears that estimates as to the future amount necessary to support plaintiff and the child were indiscriminately commingled with estimates of the amounts expended to prove the past standard of living of the parties. To cite one example — the parties had a summer home which, according to the plaintiff, was purchased for $17,500. She further testified that her husband told her he "had put $35,000 in the house" for improvements and her estimate of its value was $52,500. Then she had been told that rentals are about 10% of value but had not talked with any real estate broker. She concluded that it would cost $5,500 annually to rent a summer home for herself and the child. This item, however, was included in the annual amount going to make up the $90,000 to $100,000 per year that plaintiff testified represented the family's cost of living prior to the separation. Similarly, items for riding lessons and dancing lessons were included

although on direct examination plaintiff testified these had not continued after the first two or three years of the marriage. When defendant's counsel objected to this method of proof he was told by plaintiff's counsel " that if you wish to challenge it, there will be time enough " and the objection was overruled. Several items were duplicated by plaintiff. Thus, included in her total figure as to scale of living was the sum of $7,500 as rental value of furniture to establish her new home. She also listed therein an average of $10,000 per year for purchases of furniture during the years the parties were living together.

We conclude that plaintiff's testimony as to the cost of the standard of living of the parties was grossly exaggerated and in many respects lacking in probative value. Moreover, the trial court made no finding upon this subject. It appears that the awards to plaintiff and the child were based upon findings relating to defendant's assets and earning capacity — not income. This was erroneous because, as has been pointed out, plaintiff is not entitled to share in the husband's income as such. The burden assumed by plaintiff was to establish the standard of living of the parties within the income of the husband. In this case that burden has been barely sustained. Upon examination of the proof submitted and by a process of eliminating patently duplicating items, amounts that were not expended during the latter years of the marriage and further estimates relating to the future needs of the plaintiff we conclude that the scale upon which these parties lived required the expenditure of between $45,000 and $50,000 annually. Based upon this finding the judgment should be modified to award plaintiff permanent alimony of $20,000 and the further sum of $5,000 per annum for the support and maintenance of the infant son.

Lastly, we have for consideration the award to plaintiff of the sum of $42,000 which was found to be the amount of indebtedness incurred by plaintiff for the reasonable value of the services of her attorneys and their disbursements. The view has been expressed heretofore that this trial was unnecessarily protracted by the lengthy examination of the defendant, which amounted to a pretrial proceeding to which plaintiff was not entitled under the decisions of this court. If the plaintiff had been so advised she could have applied for the fixation of a reasonable counsel fee. Instead, she saw fit to postpone action and amend her complaint near the close of the trial to set forth a cause of action alleging that she " had necessarily incurred indebtedness to said counsel for their professional serv-

ices '' which she believed to be worth $75,000. We find in this record no proof that plaintiff had incurred any such indebtedness. She had entered into an agreement with her attorneys and paid them a retainer of $5,000. The latter agreed that such sum received from the defendant for counsel fees together with the $5,000 would be set off against the reasonable value of the professional services. Upon this trial, however, the unorthodox procedure was adopted of the plaintiff calling an attorney, as an expert witness, who expressed the opinion that the fair and reasonable value of the services was $75,000. Thereafter two of plaintiff's attorneys testified as to services rendered and the value thereof.

Thus, in the manner of presentation, the proceeding closely paralleled an application for counsel fees pursuant to section 1169 of the Civil Practice Act. Moreover, it represents another innovation in the development and evolution of the conduct of this type of action. As has been stated, the parties first agreed to have this issue, which, of course, was a common-law action, decided upon affidavits. These were submitted and the record is not clear as to subsequent events, but after the main issues had been decided the trial was reopened and further time consumed in a trial of this eleventh hour cause of action. The trial court did not find that plaintiff had incurred any indebtedness. It found the reasonable value of the services to be $42,000 and in practically the identical language of the statute authorizing an award of counsel fees (Civ. Prac. Act, § 1169) found that the services were necessary for the protection of plaintiff — not that she had incurred indebtedness, or was liable therefor. The defendant, however, acquiesced in this unconventional procedure and we limit ourselves at this time to an expression of disapproval of the segmentary trial of the issues.

Upon all the evidence we find the award for counsel fees to be excessive. In the exercise of a proper discretion the judgment should be further modified to reduce the amount of the award to plaintiff for the services and disbursements of her attorneys to the sum of $25,000.

The intermediate order appealed from should be affirmed. The judgment should be modified upon the law and facts so as to dismiss the third cause of action in the complaint on the merits and further modified in accordance with this opinion, and, as so modified, affirmed, with costs to the appellant, but with no taxable disbursements except one half of the cost of obtaining the stenographer's minutes and one half of the cost of printing the record on appeal.

Breitel J. P., Rabin, Valente and McNally, JJ., concur.

Intermediate order appealed from unanimously affirmed. The judgment appealed from modified upon the law and facts so as to dismiss the third cause of action in the complaint on the merits and further modified in accordance with the opinion filed herewith, and, as so modified, affirmed, with costs to appellant, but with no taxable disbursements except one half of the cost of obtaining the stenographer's minutes and one half of the cost of printing the record on appeal.

Settle order.