Norman H. Selke, J.
A prior, hearing of this matter before me resulted in a written decision and order based thereon dated May 11,1971, from which respondent appealed to the Appellate *586 Division, Fourth Department, challenging those parts of my order which directed payment of a stated weekly sum for support of petitioner (his wife) and their four minor dependent children and also payment of a variety of expenses of a specified nature but indefinite in amount. The Appellate Division (40 A D 2d 624) found that the following portions of my order were appropriate and approved them, viz:
(1) The direction that respondent keep in effect Blue Cross and Blue Shield insurance coverage (or the equivalent) for the benefit of the petitioner and the children and pay their medical and dental expenses.
(2) The direction that respondent pay mortgage payments, real estate taxes, water charges and insurance on the premises of the parties at No. 24 Buckingham Street, Rochester, New York, and on the summer home of the parties at Canandaigua Lake.
(3) With regard to the education of the children, the direction that respondent pay the expenses thereof, including the private education of the child, Martha Hahn, with the added provision that, as to all private schools proposed other than that presently attended by Martha, respondent may, if he deems the school inappropriate to his then financial condition, apply to Family Court to be relieved of this obligation, and, upon such application, he may be so relieved if the court finds that respondent has demonstrated such inappropriateness' and no alternate appropriate school is proposed.
The Appellate Division went on to say that as to all other obligations imposed by my order, it was more desirable to make an inclusive award of a specified sum rather than impose liability for an unfixed amount that might be subject to manipulation by petitioner; and since the record was inadequate to arrive at such a figure, remitted the proceeding back to this court for the receipt of proof on which such amount could be determined, including evidence of respondent’s income and ability to pay for the support and maintenance of his wife and children.
Further hearings were held before me at which proofs and testimony were taken, at the close of which I reserved decision in order to give both counsel, at their request, an opportunity to submit memoranda of law which was subsequently done.
A comment is necessary with regard to the education of the children. Sums for the education of the children are separate and to be paid by the respondent separately. Section 416 of the Family Court Act states that the court may include in the requirements for an order of support the providing of the *587 expenses of educating a minor. At the time that this matter was originally heard only the oldest child, Martha, was in private school (Harley). Now, all of the other children — Elizabeth, Catherine and Philip, Jr.— are enrolled in private school (Allendale-Columbia); the exact amount of tuition for each child was testified to by petitioner and is not subject to any manipulation on her part. The child, Martha, has since graduated from Harley School and is desirous of pursuing a college education. She testified as to conversations with respondent indicating his consent to a college education, his giving her funds with which to make applications to colleges and as to her acceptance at college. She further testified as to the exact expenses that would be incurred for her while attending the University of Rochester, a college to which she had been accepted and which she desires to attend. This court has the authority to make an order to include the college expenses of a child if it finds that circumstances warrant it and it would be for the best interests and welfare of the child (Matter of Weingast v. Weingast, 44 Misc 2d 952). I am finding and deciding, therefore, that separate and apart from any other support obligations imposed on respondent by this decision, that (1) he be required to provide a college education for the child, Martha, since circumstances here warrant it and it would be in her best interests and welfare and respondent has the financial ability to provide it; and furthermore that (2) consistent with the direction of the Appellate Division, respondent be required to provide for the private school education (Allendale-Columbia) of the other three children — Elizabeth, Catherine and Philip, Jr. — provided that as to the private school proposed, respondent may, if he deems the school inappropriate to his then financial condition, apply to Family Court to be relieved from this obligation and upon such application may be so relieved if Family Court finds that he has demonstrated such inappropriateness and no alternate appropriate school is proposed. Respondent has not produced any evidence here indicating that his financial condition is such that a private school education is inappropriate, nor has he proposed an alternate appropriate school.
There is no question but that respondent is chargeable with and responsible for the support of petitioner (his wife) and their four minor dependent children, and a finding to this effect has already been made in my previous order. Respondent’s duty and liability to support petitioner, his wife, and their four minor dependent children are spelled out in section 412 of the Family Court Act which provides that a husband is *588 chargeable with the support of his wife and, if possessed of sufficient means or able to earn such means, may be required to pay for her support a fair and reasonable sum as the court may determine, having regard for the circumstances of the respective parties, and in section 413 of the Family Court Act which provides that the father of a minor dependent child is chargeable with the support of his child and, if possessed of sufficient means or able to earn such means, may be required to pay for the child’s support a fair and reasonable sum according to his means as the court may determine. And section 416 of the Family.Court Act sets forth the elements of support such as food, clothing, shelter, etc. and other proper and reasonable expenses. It is fundamental that any support directed to be paid by the respondent must be commensurate with the needs and requirements of the petitioner and the children, on the one hand, and the ability of the respondent to meet them, on the other. In making its determination here, the court must take into consideration all relevant factors including the respective circumstances of the parties (financial status of the parties, age, health, necessities, obligations, status in life, duration and nature of the marriage, conduct of the parties, etc. (Phillips v. Phillips, 1 A D 2d 393, affd. 2 N Y 2d 742), another one of which is the preseparation standard of living the petitioner and the four minor dependent children are entitled to enjoy (Weltman v. Weltman, 30 A D 2d 658). The same standard of living criteria apply to a father’s obligation to support his minor dependent children as well as to his wife (Gladstone v. Gladstone, 35 Misc 2d 206; Borchard v. Borchard, 5 AD 2d 472). In summary, therefore, whether respondent is providing proper or adequate support must be measured in relation to his means (not being limited to his means only, but also including his ability to earn such means) and his dependents’ needs and station of life (Family Ct. Act, §§ 412, 413, 414).
There is authority in the law so as to permit the court to direct respondent to provide and pay for maintenance and repairs both to the Buckingham Street premises (occupied by petitioner and the four children) and the summer home at Canandaigua Lake. These items fall properly, reasonably and logically within the language ‘ ‘ shelter ’ ’ and £ ‘ other proper and reasonable expenses ” in .section 416 of the Family Court Act as construed with section 236 of the Domestic Relations Law (see Matter of Smith v. Smith, 53 Misc 2d 712).
Respondent no longer lives in Rochester but has moved to Florida, where he has formed a new corporation, Paine Asso *589 ciates, to equip hospitals and nursing homes. It has been held that the statutory language subjecting respondent “if possessed of sufficient means or able to earn such means ” to the requirement that he pay for support a fair and reasonable sum to be determined by the court, declares the doctrine that the measure of his obligation is his potential rather than his lesser actual hearings (Manheim v. Manheim, 200 Misc. 802; Anonymous v. Anonymous, 22 N. Y. S. 2d 432). In this regard, therefore, I must give some consideration to respondent’s assets and net worth (as well as his actual income and earnings) as reflecting upon his ability to earn means. Now, as to the current evidence of respondent’s income and ability to pay. Respondent is in his forties and probably in the prime of life. He is a graduate of both Dartmouth College and the Harvard Business School from which he holds the degree of Master of Business Administration. He is an enterprising and experienced business man. Since moving to Florida he arranged to buy a building for $100,000 in the name of Paine Associates, Inc., a corporation which he formed in Florida in order to do business there; the building is used as a corporate office and as a place for respondent to live. He has already contracted to provide with hospital equipment the Seaboard Convalescent Center in Pompano Beach for $135,000 and the Princess Margaret Hospital in Nassau for “ several hundred thousand dollars ”, as he testified, both on a gross profit margin of 10%. His former Grosman Arms Company stock has been converted to 60,000 shares of Coleman Company stock which paid respondent dividends of $24,000 in 1972. He is still president and sole stockholder of Paine’s Surgical & Supply Co. in Rochester, New York, by which he is. paid $14,000 per year. Whether this is an adequate income for respondent to realize from this company is open to question, since in 1972 the assets of the company were $687,947.05, it owed respondent $200,000, lists his capital stock as $78,900, lists its capital surplus at $90,714.61, lists retained earnings of $102,-460.28 and also lists treasury stock as worth $138,250. Furthermore, when Paine Drug Co. was sold in 1969 to Clinton Merchandising Company, as part of the sale respondent was to receive a yearly consultation fee of $15,000 through 1976. Initially, this sum was paid to respondent’s father in payment and satisfaction of a debt. It now appears that the debt owed respondent’s father has been discharged and that the $15,000 is now due and payable to respondent as income to him, although it is respondent’s claim that he has assigned it to the Paine *590 Company. At the time of the original hearing before me respondent owned with his mother certain real estate at No. 1180 Main Street East, Rochester, New York. He has since conveyed his interest to his mother for $175,000. He testified that he has not been paid this sum of money nor is he being paid this money in installments. Ostensibly she is supposed to be paying respondent 6% interest but he was not sure. In summary, therefore, it would seem that respondent has realizable income yearly of:
Coleman dividends .............. $24,000.00
Paine Co........................ 14,000.00
Clinton Merchandising........... 15,000.00
6% on $175,000.00 ............... 10,500.00
$63,500.00
To this should be added the profit he should be receiving from his Florida corporation which is operating on a 10% gross profit margin. Also of interest is P-Ex-2 (respondent’s financial statement given to Lincoln Rochester Trust Company) in which he shows, among his assets, cash on hand of $20,000, readily marketable securities worth $2,100,000 (now possibly $1,600,000), and a net worth of $2,252,898.
Respondent’s actual living expenses do not appear to be substantial. His Florida corporation owns the building in which he has living quarters, thus permitting him to live rent free. Apparently, his travel expenses to and from Florida] and Rochester, as well as the expenses of operating his automobile in Florida, are handled as business expenses and not paid by respondent personally. He testified that his expenses for food are about $30 per week; clothing $500-$600 per year; a cleaning lady $20 every two weeks; laundry and dry cleaning, under $5 per week; hair, cuts twice a year; vacations and trips, $700-$800 per year; personal entertainment, $10-$15 per week; drugs, sundries, newspapers, magazines, books, $5-$10 per week. These are the only expenses respondent testified to so that his expenses for his own persona,! needs average out to something less than $100 per week. I
It should also be noted that in recent months respondent spent $5,000 on a campaign for election to public office in Florida, provided his daughter, Martha, with a 1972 Volkswagen and bought a $1,300 boat (Boston Whaler) for the children. All of this can only reflect favorably upon his ability to pay support.
Petitioner and the four children still live in a large, three-story, 50-year-old house at No. 24 Buckingham Street in the *591 City of Rochester, New York, jointly owned by petitioner and respondent and in which respondent also lived np to the time he moved out in 1968. Petitioner has no assets or income, is not employed, and does not intend to seek employment, so that she can give full time to the proper care and supervision of the children. She has no source of income other than the support provided by respondent. Based upon direct and cross-examination, petitioner testified to the following living expense budget for herself and the four children based upon their present and preseparation standard of living:
Buckingham Street ($1,085.00 — yearly recurring maintenance expenses such as snow plowing, grass cutting, cleaning lady, electrical and plumbing repairs, changing screens and storm windows, etc.).........$ 21.00 per wk
* Summer Cottage ($432.00 — yearly recurring maintenance expenses such as grass cutting, service calls, garbage collection, turning water on and off, putting in and taking out dock, etc.) .................... 8.50 per wk
Vacations ($4,860.00 — yearly, including food, travel and lodging)...................... 93.00 per wk
Entertainment ........................... 53.00 per wk
Newspapers, books and magazines.......... 2.75 per wk
G-asoline, oil and repairs to automobile....... 15.50 per wk
Automobile insurance ...................... 5.75 per wk
Drugs ................................... 14.00 per wk
Food .................................... 150.00 per wk
Clothing, yearly:
Petitioner ..........$ 4,812.00
Philip .............. 1,870.70
Martha ............. 3,337.50
Elizabeth & Cathy ... 2,579.19
$12,599.39 243.00 per wk
Contributions ............................ 1.50 per wk
Haircuts, hair-do’s ....................... 7.50 per wk
Total $615.50 per wk
*Respondent is separately obligated, in the view of the Appellate Division, to pay for mortgage payments, real estate taxes, water charges and insurance on both premises; hence these items are not included in petitioner’s budget.
*592 It must be noted that there is nothing in the above budget for fuel, utilities and telephone, since there was no testimony to cover these items except that petitioner testified that respondent has been paying for the gas and electricity and telephone at both premises. It would seem, therefore, that in fixing the amount of support some allowance should be made in petitioner’s budget for fuel, utilities and telephone and that this should not be paid for separately by respondent.
It is the position of respondent that several items in petitioner’s budget are inflated and overexaggerated and not properly substantiated, particularly the vacation, entertainment, food and clothing items. On the whole, I feel that petitioner did substantiate the various items in her budget. If any one could have rebutted her figures, respondent was in the best position to do so but he did not testify to this effect. Any reduction in the food item by reason of Martha’s being out of the home at college is probably offset by the rising prices of food. Many of the activities listed under entertainment are not being as regularly pursued as before the separation since petitioner simply has not had adequate funds to do so; the same applies to vacations. It is true that the clothing items seem high in the light of my previous finding that for the period of 1966-1969 the yearly average expenditure for clothing was $3,900; again, however, it must be remembered that each of the four children is older and more expensive to clothe and that the price of clothing has also risen. It was the testimony of respondent’s home economist expert, Mary McCartney, that a gross income of $17,500 per year, before all taxes, in the Rochester area was sufficient to maintain a high standard of living for a family of five persons, such as petitioner and the four children. From this amount expenses for housing, taxes, food, clothing, shelter, etc. are to be paid. It was pointed out that petitioner is presently receiving $16,900 per year ($325 per week) with no expenses for taxes, housing, medical expenses, etc. The testimony of Miss McCartney is not entirely reliable because (1) her figures are averages and do not relate to the preseparation standard of living enjoyed by petitioner and the children; (2) her figures do not reflect both a home and summer cottage, as here; (3) her figures are limited to an “above average family” and not to the Hahn family; and (4) her high standard of living related to an income of $17,500 per year and she was unable to give any opinion in the case where a father’s income might be twice or three times as much as $17,500. Some consideration must also be given to the fact that *593 petitioner will bear Federal and State income taxes on any sum of money awarded as alimony payments to her. She testified that she filed Federal and State income tax returns as a single person and did not claim any deductions but took the standard deduction and claimed only one exemption. Conversely, of course, the respondent will be able to claim as a direct deduction any sum paid by him to petitioner by way of alimony. Incidentally, respondent would have it noted that he has á guarantor’s liability on the $200,000 note to Lincoln Rochester and individual liability to the First National Bank in Florida on the $100,000 used to buy real estate in Florida owned by respondent’s corporation, Paine Associates.
At this point it might be appropriate to review the evidence with reference to the maintenance and repairs to No. 24 Buckingham Street and the Canandiagua Lake summer cottage:
CANANDAIGUA LAKE SUMMER COTTAGE
Frankly, there was no expert testimony as to the maintenance and repair of the cottage. However, from an examination of P-Ex-13 and P-Ex-14 and from petitioner’s testimony, it can reasonably be concluded that the following things need to be done:
(1) New roof (present roof leaks) —no estimate
(2) Paint outside (estimate — $1200)
(3) Breakwall and entire foundation of cottage and porch should be inspected and checked for cracks and settling and necessary repairs made as indicated by such inspection.
Appliances:
(1) Power mower replaced (estimate — $100)
(2) Hot water heater replaced (must run on electricity and not gas — no estimate)
Respondent presented no proof or testimony to rebut or refute the foregoing.
NO. 24 BUCKINGHAM STREET
It is uncontroverted from the testimony and exhibits that the Buckingham Street premises and its furnishings are in need of renovation and repair.
(1) Painting and decorating:
Petitioner’s expert witness, Robert Jordan of W.W. Jordan & Sons, Pittsford, New York, *594 testified to a figure of $10,550 ($9,860 labor and materials plus 1% sales tax of $690.20) with an indication that prices were now 5% higher than when he made his estimate several months earlier.
Respondent’s expert witness, Joseph J. Scofero of Joseph J. iScofero & Son, Webster, New York, testified to a figure of $5,272.10 plus $800 for wallpaper for a total of $6,072.10 (see R-Ex-D). I was more favorably impressed by Mr. Scofero insofar as the reliability and accuracy of his figures were concerned since Mr. Jordan could not give the basis on which his figures were arrived at. Since he is respondent’s witness, respondent should be bound by his figures.
(2) Furniture :
Petitioner’s expert witness, Lois C. Maier, testified to a figure of $2,492.80 ($1,392.80 materials and $1,100 labor) plus 7% sales tax plus something more which she could not estimate by way of a price increase since she had made her estimate.
Respondent’s expert witness, Anthony J. Castronova of Nova Finishing Company, Rochester, New York, testified to a figure of $2,619 (see Rr-Ex-C) and further testified that he would do the complete job for $3,000, absorbing therein sales tax and any anticipated increase in labor and materials.
Since the respective estimates are relatively close and since Mr. Castronova’s figure is more definite and certain, it would seem reasonable that the work should ,be done by him particularly since he, too, is respondent’s witness and respondent should be bound by his figures.
(3) Carpeting:
Petitioner’s expert witness, Lois C. Maier, testified to the following figures:
Living room: .............$1,756.07
221.48 pad 171.44 install
$2,148.99
*595 Kitchen:
$ 238.80
47.76 pad
54.00 install
$ 340.56
Stairs, hall and front entry: $1,706.50
168.09 pad
130.11 install
7.50 strip
$2,012.20
Bedrooms: #1 ............$ 507.29
#2 ............ 443.70
#3 ............ 384.54
#4 ............ 295.80
$1,631.33 materials only
Total $6,133.08 (plus sales tax and labor for bedrooms.)
(Although this puts carpeting where there was none before, it was testified that it is a matter of refinishing the floors or putting down carpeting and it is cheaper to put down the carpeting.)
(4) Draperies:
Petitioner’s expert witness, Lois C. Maier, testified to the following figures:
Living Room 488.22 overdrap.es 429.05 underdrapes $
Stairway 236.79
Library 263.97
Dining Boom 207.47
Shades in Dining
Room doors 379.05
Master Bathroom . 103.20
Master Bedroom . 304.79
Child’s Boom 100.30
Powder Boom____ 130.20
Bedroom #1..... 228.75
*596 Bedroom #2 ........ 330.49
Bedroom #3 ........ 231.83
Total $3,434.11 (materials only; no labor; pins sales tax).
(Respondent waived Ms right to present proof on the matter of the draperies and, other than cross-examination, presented no other proof on the matter of the carpeting. Respondent, therefore, is bound by these figures.)
• Appliances:
(1) Automobile: Respondent has been supplying both petitioner and Martha with an automobile. Said automobiles have been kept either in respondent’s name or the business name and the expenses of operating said automobiles have apparently been taken as business expenses. Petitioner testified that she is presently driving a 1970 Ford station wagon to replace which would cost $4,800.
(2) Disposal: blade broken: cost $90 to replace.
(3) Dishwasher leaking: $13 service charge.
(4) Television sets: three sets in house, none work.
Motorola — not repairable.
14" portable — 4-5 years old.
21" portable — cost at least $200 to replace.
(Petitioner gave the foregoing testimony as to these appliances none of which was rebutted or refuted by respondent.)
After carefully considering and weighing the needs and requirements of the petitioner and the four minor dependent children and the financial means and abilities (including his potential abilities to earn means as well as his actual means and also including the accustomed standard of living which is within his means and abilities to sustain) of respondent, as well as the effect that my decision may have on his financial circumstances and the respective circumstances of the parties, I am finding and deciding as follows:
(1) That petitioner and the four children continue to live in and occupy the premises at No. 24 Buckingham Street, Rochester, New York.
*597 (2) That petitioner and the four children continue to have the beneficial use and occupancy and enjoyment of the summer home located at Canandaigua Lake.
(3) That respondent, effective February 1, 1974, pay directly to petitioner as and for the support of herself and the four minor dependent children the sum of $500 per week, allocated $100 per week for the support of the petitioner and $400 per week for the support of the children, at the rate of $100 per week per child, and that, in addition thereto:
(a) Respondent pay mortgage payments, real estate taxes, water charges and insurance on the premises of the parties at No. 24 Buckingham Street, Rochester, New York, and on the summer home on Canandaigua Lake.
(b) Respondent keep in effect Blue Cross/Blue Shield coverage (or the equivalent) for the benefit of petitioner and the children and pay their medical and dental expenses.
(c) Respondent provide for the college education of the child, Martha, and for the private school education of the other three children, Elizabeth, Catherine and Philip, Jr., provided that as to the college or private school proposed, respondent may, if he deems the college or school inappropriate to his then financial condition, apply to Family Court to be relieved from this obligation and upon such application may be so relieved if Family Court finds that he has demonstrated such inappropriateness and no alternate school is proposed.
(d) Upon compliance with the foregoing directions and in accordance with existing income tax] rules and regulations respondent is to be permitted to claim the four children as dependency exemptions; and if he itemized his deductions, he is to be permitted to deduct as alimony payments the aforesaid $100 per week paid to the petitioner who, in turn, is to include them in her income for income tax purposes; and if he itemizes his deductions, respondent is to be permitted to deduct medical and dental expenses actually paid by him for the benefit of petitioner and the four children, as well as any real estate taxes and mortgage interest actually paid by him on the Buckingham Street and Canandaigua Lake properties.
(4) That within 30 days from February 1, 1974, respondent is to make definite arrangements (and advise the petitioner, in writing with regard thereto) in connection with the Canandaigua Lake summer cottage to have the roof on the cottage and garage replaced, to have the outside painted and to have the breakwall and entire foundation of cottage and porch inspected and *598 checked for cracks and settling and necessary repairs made as indicated by such inspection, all materials and labor in connection with the foregoing to be paid by respondent and all work to be undertaken and completed as soon as weather permits, but in no event later than August 1, 1974; and furthermore, at his own cost and expense and not later than June 1, 1974, respondent replace the power mower and hot water heater at the cottage.
(5) That within 30 days from February 1, 1974, respondent is to make definite arrangements (and advise the petitioner in writing with regard thereto) in connection with the Buckingham Street premises to have the same painted and decorated as set forth in R-Ex-D by Joseph J. Scofero of Joseph G. Scofero & Son, Webster, New York, at a cost to be paid by respondent of $6,072.10, to have the furniture repaired as set forth in R-Ex-C by Anthony J. Castronova of Nova Finishing Company, Rochester, New York, at a cost to be paid by respondent of $3,000, to have carpeting installed through Lois C. Maier as previously set forth in this decision at a cost to be paid by respondent of $6,133.08 plus ,sales tax and labor, and to have draperies installed through Lois C. Maier as previously set forth in this decision at a cost to be paid by respondent of $3,434.11 plus labor and sales tax, all work to be undertaken and completed as soon as labor and materials are available. And, furthermore, within 30 days from February 1, 1974, respondent, at his own cost and expense, arrange to replace the disposal, take care of the leak in the dishwasher and provide at least two television sets to replace the 14-inch and 21-inch portables.
(6) Respondent continue to provide an automobile for the transportation and use of the petitioner and the four children (at least such as would qualify for an inspection sticker under the laws of the State of New York).
• There remains to be considered the application of counsel for petitioner for an award of counsel fees in connection with which he has submitted an affidavit in support thereof. What criteria should the court follow in the fixation and determination of counsel fees? Generally speaking, they are (1) the discretion of the court, (2) the circumstances of the case, and (3) the requirements of justice. More specifically, the courts have held that, the relevant factors are the nature and extent of the services, the actual time spent, the necessity therefor, the nature of the issues involved, the professional standing of counsel and the results achieved (see Matter of Burk, 6 A D 2d 429; Matter *599 of Potts, 213 App. Div. 59). I am also taking into consideration the fact that petitioner herself is financially unable to pay counsel fees since she is entirely dependent upon respondent for support of herself and the children and also the fact that it was necessary for her to resort to the aid of this court by reason of the appeal taken by respondent which resulted in this present hearing. Accordingly, counsel fees are hereby awarded and allowed to counsel for petitioner in the amount of $2,300, this being deemed by me fair and reasonable under the circumstances of the .case, and in addition thereto witness fees of $250 and disbursements of $26.10, for a total of $2,576.10.
Counsel fees and disbursements so awarded are to be paid directly by respondent to petitioner’s counsel within 60 days from February 1, 1974, or at such other times or on such other terms as counsel for petitioner and respondent might otherwise mutually agree upon between themselves.
None of the obligations of the respondent by way of support or counsel fees shall become effective, however, without there first being served upon respondent’s counsel a copy of an order to be submitted in accordance with this decision with notice of entry thereof at least 10 days in advance of the date when payment of such obligations become effective as provided herein.